IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JON S. BIJOLD, JR., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-1230 |
| MICHAEL J. ASTRUE,<br>Commissioner Of<br>Social Security | ) | Judge Nora Barry Fischer |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

This action was filed by Jon Bijold ("Plaintiff") pursuant to 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f. Now before the Court are Cross-Motions for Summary Judgment. (Docket No. 11 and 13). The parties have filed briefs in support of their respective motions (Docket No. 12 and 14). Upon analysis and consideration of each submission, and as set forth herein, the decision of the Administrative Law Judge is affirmed.

**I. PROCEDURAL BACKGROUND**

Plaintiff filed an application for DIB and SSI on July 14, 2005, alleging disability due to severe depression beginning on December 31, 2001. (Docket No. 9-1 at 64-72 ; R. at 62-70, Docket No. 9-3 at 3-15; R. at 258-271)(hereinafter as "R. at ___"). Plaintiff's claims were initially denied

1

on October 17, 2005, and a hearing was held before an Administrative Law Judge ("ALJ") on October 31, 2006. (R. at 41-44, 272-275, 303-334). Plaintiff appeared and testified at the hearing and was represented by counsel. (R. at 303-334). Additionally, a Vocational Expert ("VE") was present and gave testimony. *(Id.)* On August 13, 2007, the ALJ issued an unfavorable decision finding that Plaintiff had the mental ability to work and could perform work that exists in significant numbers in the national economy and concluded that Plaintiff was "not disabled" under the Act. (R. at 15-24). On August 4, 2008, the Appeals Council denied Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. (R. at 5-8). Having exhausted all administrative remedies, Plaintiff filed this action on September 4, 2008. (Docket No.1). Plaintiff filed a motion for summary judgment on January 5, 2009 (Docket No. 11), and the Commissioner filed a motion for summary judgment on January 26, 2009 (Docket No. 13).

## II. STANDARD OF REVIEW

When reviewing a decision denying DIB and SSI, the district court's role is limited to determining whether substantial evidence exists in the record to support the ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)(quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). Additionally, if the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); *Richardson,* 402 U.S. at 390. A district court cannot conduct a *de novo* review of the Commissioner's decision nor re-weigh evidence of record. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa. 1998). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. §706.

To be eligible for social security benefits under the Act, a claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The ALJ must utilize a five-step sequential analysis when evaluating the disability status of each claimant. 20 C.F.R. §404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., pt. 404 subpt. P., appx. 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy. 20 C.F.R. §404.1520(a)(4).

If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiffs's mental or physical limitations, age, education, and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).

### III. FACTUAL HISTORY

At the time of the ALJ's decision Plaintiff was thirty-two years old. (R. at 62, 258). Plaintiff was twenty-six years old at the alleged onset of the disability and is therefore classified as a "younger individual" under 20 C.F.R. §§404.1562 and 416.963. (*Id.*) Plaintiff graduated from high school in a special education curriculum and is literate and can communicate in English. (R. at 22). Plaintiff

had previously been employed in various laborer positions from 1996 through 2004. (R. at 91-98). The ALJ held that the amount of Plaintiff's earnings from the date claiming disability did not exceed the primary guideline for determining substantial gainful activity. (R. at 17).

Plaintiff reported that he first began treatment for depression in 2002 with his family physicians, Dr. Gunter and Dr. Ryan. (R. at 111-117, 162-166). On August 13, 2003, Plaintiff was examined by Dr. Ryan. (R. at 177). Plaintiff's complaints were lack of energy, lack of interest, excessive sleep and feeling "down and out." *Id*. Dr. Ryan noted that Plaintiff had a depressed mood, impaired insight, and flat affect, but also adequate judgment, no evidence of bizarre thoughts or behavior and no ideas of self-harm (R. at 178). Dr. Ryan diagnosed Plaintiff with Schizo-Affective Disorder[1] and found a Global Assessment of Functioning ("GAF") estimate of 45.[2] (R. at 179). Dr. Ryan recommended that Plaintiff begin taking Paxil and start attending a counseling service. *Id*.

Dr. Ryan's notes from September 24, 2004 state that Plaintiff had been on Lexapro since February of 2004 and was functioning "awesome" day to day. (R. at 182). On December 13, 2004, Dr. Guntur noted that Plaintiff's depression was pretty well under control and that he did not have any suicidal ideas. (R. at 230). On January 31, 2005, Plaintiff was examined by Dr. Margaret McKinley of the Pennsylvania Bureau of Disability Determination. She recorded that Plaintiff still

---

[1] Schizoaffective disorder is a disorder in which a mood episode and the active-phase symptoms of Schizophrenia occur together and were preceded or are followed by at least 2 weeks of delusions or hallucinations without prominent mood symptoms. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000)

[2] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). *Id*. (emphasis in original).

4

felt depressed although taking medication, felt tired frequently and had poor concentration. (R. at 184-185). Dr. McKinley found Plaintiff to have Depressive Disorder NOS (not otherwise specified) and to have a GAF score of 55.[3] (R. at 186). Dr. McKinley's prognosis was that Plaintiff would benefit from ongoing medication treatment although the likelihood of substantial improvement was guarded. *Id*. Dr. McKinley found Plaintiff to be capable of managing his own finances although Plaintiff appeared to have difficulty remaining on task and seemed to do very little. *Id*. For the Pennsylvania Disability Determination, Dr. McKinley found Plaintiff to have moderate restrictions in all work related activities based upon a sporadic and poor work history, and an inability to maintain regular employment. (R. at 188-89). However, Dr. McKinley also found Plaintiff to be able to manage benefits in his own best interest. *Id*.

Dr. Guntur's notes state that Plaintiff's depression remained under control during a check-up on February 21, 2005. (R. at 231). Dr Guntur reported that Plaintiff's June 2005 check-up indicated that Lexapro was controlling Plaintiff's depression and temperament. (R. at 206). Despite this, Plaintiff stated that Lexapro made him so tired that he could not do anything. (R. at 79, 82). Dr Guntur also reported that Plaintiff's psychomotor activity was average and not very good, his social and test judgment was average and his insight average to poor. (R. at 207). Dr. Guntur determined that Plaintiff was moderately to severely depressed, and that his depression was moderately to substantially controlled by Lexapro. *Id*. He also determined that Plaintiff could perform activities of daily living and had enough concentration to remember appointments and complete assignments.

---

[3] A GAF score between 51 and 60 indicated some moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functions (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000) (emphasis in original).

*Id*. On September 16, 2005, Dr. Guntur noted that Plaintiff was depressed and had good days and bad days, but lacked major depression and suicidal ideation. Dr. Guntur changed Plaintiff's medication from Lexapro to Zoloft. (R. at 232). Dr. Guntur's notes from a February 3, 2006 check-up state that Dr. Guntur thought that Plaintiff was temporarily disabled because his moods were not completely controlled; however, Plaintiff was not suicidal and his moods were stable at that time. (R. at 233). On May 15, 2006, Dr. Guntur reported that Plaintiff's depression was substantially controlled. (R. at 234). On August 14, 2006, Dr. Guntur reported that Plaintiff wanted to change medications, and Dr. Guntur started Plaintiff on Prozac. Dr. Guntur also noted that his impression was that Plaintiff had bipolar disorder as well as depression. (R. at 235). Dr. Guntur did find Plaintiff to be temporarily disabled for the Pennsylvania Department of Public Welfare. (R. at 237, 239).

In November of 2006 Dr. Joel Last of the Pennsylvania Bureau of Disability Determination, examined Plaintiff and found him to be very depressed, and having passive suicidal ideation. (R. at 254). Dr. Last found no evidence of psychosis, however, Plaintiff could not recall the name of the President of the United States or calculate the sum of a nickel, dime and quarter. *Id*. Dr. Last found Plaintiff to have Major Depression without psychotic features, but also stated that it was possible that Plaintiff was malingering based on his failure to answer simple questions. *Id*. Dr. Last estimated Plaintiff's GAF score to be 45. (R. at 255). Dr. Last determined that Plaintiff had only slight restrictions in his ability to perform work-related activities; however, Dr. Last also found that Plaintiff could not manage benefits in his own best interest. (R. at 256-57).

Two state agency psychologists reviewed Plaintiff's records and concluded that he had zero to mild restrictions in daily living and moderate restrictions in social functioning, concentration,

persistence and pace. (R. at 200-205, 219-225). Plaintiff was also examined by Dr. Weisel for the Pennsylvania Department of Public Welfare, who concluded that Plaintiff was permanently disabled and a candidate for DIB and SSI. (R. at 290). At Plaintiff's hearing, he testified that he did not perform his own housework, that he had occasional suicidal thoughts, mostly stayed at home and slept in excess of fifteen hours per day. (R. at 312-321). Plaintiff stated that he had feelings of hopelessness, was unable to enjoy or find pleasure in things, and had difficulty with his concentration. *Id.*

The ALJ determined that Plaintiff had Schizo-Affective Disorder, Bipolar Disorder and Major Depressive Disorder. (R. at 17-18). The ALJ found these impairments to have more than a minimal impact on the Plaintiff's residual functional capacity, thereby making them "severe" under 20 C.F.R. §§404.1520(c) and 416.920(c). (R. at 18). The ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. *Id.* The ALJ based his conclusion on Dr. McKinley's finding that Plaintiff had only moderate limitations and was oriented to time, place and person, and that Dr. Last found not more than a slight limitation in any area of functioning. *Id.* The ALJ noted that the medical evidence did not contain the objective signs or findings of functional limitations necessary to meet or equal the listings, and no medical source opined that Plaintiff met or equaled any of the listings. *Id.*

The ALJ determined that Plaintiff had the residual functional capacity to perform simple, repetitive, routine work at any exertional level not requiring more than occasional interaction with co-workers or the public. *Id.* The ALJ found it to be appropriate to classify Plaintiff's symptoms under Listing 12.03, "Schizophrenic, Paranoid and Other Psychotic Disorders" and Listing 12.04,

"Affective Disorders." (R. at 19). The ALJ then evaluated Plaintiff's disorders within the parameters of the 12.03 and 12.04 "B" criteria.[4] *Id*. For activities of daily living, the ALJ found only mild limitations based upon the fact that Plaintiff was capable of living on his own and appeared to be capable of caring for himself on his visit to Dr. Last. *Id*. The ALJ found moderate limitations on Plaintiff's ability to maintain social functions based upon Plaintiff's maladaptive social behavior as documented in the record, as well as the reports of Dr. McKinley and Dr. Last, which indicated that Plaintiff had the ability to interact appropriately with co-workers, supervisors and the public. (R. at 19-20). For the third criteria of maintaining concentration, persistence or pace, the ALJ found the Plaintiff had moderate limitations, but retained the ability to perform simple, repetitive and routine tasks. (R. at 20). In making this finding, the ALJ considered Dr. McKinley's report that Plaintiff had difficulty concentrating and could not perform serial seven subtractions, but did have goal oriented thought processes and could carry out instructions. *Id*. The ALJ also considered Dr. Last's evaluation that found Plaintiff to be able to understand, remember and carry out instructions with only slight limitations. *Id*. As to episodes of decompensation, the ALJ found that there was no evidence of such episodes because Plaintiff never required inpatient hospital care for his impairments, and both Dr. McKinley and Dr. Last found Plaintiff to be able to withstand ordinary work pressures. *Id*.

---

[4]Section B requires that the disorder listed in Section A result in "in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence or pace; or
        4. Repeated episodes of decompensation, each of extended duration."

20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then considered the 12.03 and 12.04 "C" criteria of the Listings and determined that Plaintiff did not meet the criteria.[5] (R. at 20-21). The ALJ stated that there was no evidence that Plaintiff had any episodes of decompensation or that Plaintiff's impairments were such that a minimal increase in mental demands would lead to an episode of decompensation. *Id*. The ALJ concluded that since Plaintiff was never treated as an inpatient and because he was able to care for himself and perform daily functions with no more than a moderate limitation, Plaintiff did not meet the "C" criteria. (R. at 21).

In determining Plaintiff's residual functional capacity, the ALJ found that no more than minimal weight was to be afforded to the opinions of Dr. Ryan, Dr. Guntur and Dr. Last with respect to Plaintiff's GAF score. *Id*. The ALJ stated that the GAF is a subjective scale that is primarily based on the clinician's subjective judgment and is sometimes operationalized as the lowest level of functioning for the past week. (R. at 22). The ALJ also pointed out that Dr. Last's estimation of a GAF score of 45 was made without any apparent psychological or psychiatric testing and based as least primarily on Plaintiff's subjective complaints. *Id*. Additionally, Dr. Last raised the possibility of Plaintiff malingering and only found Plaintiff to have slight limitations. Similarly, the

---

[5] Section C requires that the disorder listed in Section A result in "more than a minimal limitation of an ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even an minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of a continued need for such an arrangement."

20 C.F.R. Pt. 404, Subpt. P, App. 1.

state agency consultants, although non-examining physicians, also found that Plaintiff retained a residual functional capacity to perform work. *Id*. The ALJ also noted that Dr. Gunter did not complete a residual functional capacity assessment and his opinion that Plaintiff was disabled was not entitled weight or special significance.

Based upon Plaintiff's age, education, work experience and residual functional capacity the vocational expert concluded that Plaintiff would be able to perform occupations such as garment hole puncher, conveyor loader, assembler and laundry laborer. (R. at 23). The vocational expert testified that 590 of these jobs exist locally and 403,560 nationally. *Id*. Based upon this testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and therefore is "not disabled" under the Act. *Id*.

## IV. DISCUSSION

Plaintiff raises five issues in challenging the ALJ's decision: (1) the ALJ did not use the appropriate analysis in determining that Plaintiff's subjective complaints to be less than credible; (2) the ALJ improperly rejected and invalidated the medical opinions of Plaintiff's treating and examining medical sources; (3) the ALJ improperly concluded that Plaintiff's impairments do not meet the Listing requirements; (4) the ALJ's finding of Plaintiff's residual functional capacity was not properly reduced to the extent established by the record; and (5) the ALJ failed to include specific impairments in the hypothetical question to the vocational expert.

As to the first issue, Plaintiff states that the ALJ did not properly consider Plaintiff's statements concerning the intensity, duration, and limiting effects of his symptoms. Plaintiff argues that the ALJ selectively ignored sections of the record to discredit the severity of Plaintiff's

10

symptoms. In particular, Plaintiff challenges the ALJ rejection of the GAF scores because they were based on Plaintiff's subjective complaints. Additionally, Plaintiff challenges the use of his daily living activities to show an ability to engage in substantially gainful activity.

When the ALJ considers the subjective symptoms of the claimant, the ALJ is to evaluate those symptoms, consistency with the objective medical evidence and other evidence. *See* 20 C.F.R. §404.1529. Great deference is owed to the credibility determinations of the ALJ since the ALJ has the first hand opportunity to assess the claimant. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). In finding that Plaintiff's subjective symptoms were entitled less than full weight, the ALJ pointed to the fact that Plaintiff had never required inpatient care for his impairments, that Dr. Last and the state agency consultants did not find more than minimal limitations, and that the possibility of malingering existed and had not been ruled out. (R. at 22). Additionally, the ALJ relied on the report of Dr. Gunter that Plaintiff's depression was substantially controlled by medication. (R. at 21). There is no indication that the ALJ selectively excluded evidence that indicated greater severity of Plaintiff's impairments, as the evidence in the record as a whole is represented in the ALJ's decision. Furthermore, the daily activities cited by the ALJ as evidence contradicting Plaintiff's subjective symptoms was not the sole basis used by the ALJ. Plaintiff's description of his own daily activities may be considered by the ALJ when determining the Plaintiff's credibility and residual functional capacity. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). Since the ALJ did point out contradictory objective evidence some of which came from Plaintiff's medical sources, the ALJ's credibility determination is supported by substantial evidence. *Burnett v. Commissioner of Social Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). The ALJ's conclusion that the GAF scores could not be given great weight is also supported by the record as a whole.

As to Plaintiff's second issue, Plaintiff argues that the ALJ improperly rejected the medical opinions of Dr. Guntur and Dr. Weisel. Plaintiff states that the ALJ summarily rejected Dr. Guntur's opinion as being "reserved to the Commissioner" which is an invalid reason. Plaintiff argues that the ALJ failed to properly develop a record that contradicted the treating source medical opinions of Dr. Guntur and Dr. Weisel, and their opinions should therefore been afforded "controlling weight."

Under the regulations, "controlling weight" is to be given to the medical opinions of a treating physician when the physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] record." 20 C.F.R. §§404.1527(d)(2), 417.927(d)(2). Plaintiff claims that the medical opinions of Dr. Guntur and Dr. Weisel are uncontradicted by other medical evidence. However, as pointed out by the ALJ, Dr. Guntur's notes indicated that Plaintiff's depression was substantially controlled, and Dr. Last found Plaintiff to only have slight limitations. (R. at 21-22). As to Dr. Weisel's opinion that Plaintiff was permanently disabled and a candidate for SSI and DIB, his opinion is a check-in-the-box form that lacks any explanation. (R. at 290). Such forms are not substantial evidence when they lack an explanation from the treating physician. *Manson v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). As to Plaintiff's argument that the ALJ did not sufficiently develop the record to make a "sound determination," the ALJ did not find Dr. Guntur's opinion to have less than "controlling weight" because of a lack of evidence, rather it was because Dr. Guntur's opinion was inconsistent with the record. Therefore the ALJ's decision to disregard the opinions of Dr. Guntur and Dr. Weisel was not based solely on there being an issue "reserved for the Commissioner," rather, it was based upon the record as a whole.

The third issue raised is that the ALJ, in failing to properly credit Plaintiff's subjective complaints and medical opinions, should have found Plaintiff's impairments met or medically equaled the Listing impairments. Specifically, Plaintiff argues that the ALJ should have called a medical advisor to testify as to any of the conflicts and/or ambiguities in the medical records. Plaintiff argues that if at the time of the hearing, the record fairly raises a question of whether the impairments are equivalent to a Listing, a medical expert should evaluate it.

As discussed above, the ALJ's decision to discredit Plaintiff's subjective complaints and certain medical records is supported by substantial evidence in the record. Based upon the record, without re-weighing the evidence, the ALJ's decision that Plaintiff's impairments did not meet the Listing requirements is supported by substantial evidence. As to Plaintiff's claim that the ALJ should have called a medical expert to determine if the impairments met a Listing, the ALJ found Dr. McKinley, Dr. Last and Plaintiff's medical records sufficient to make a judgment as to Step Three of the five-step analysis. Thus, the ALJ's finding is supported by the record.

As to the fourth and fifth issues, Plaintiff argues that the ALJ's assessment of Plaintiff's residual functional capacity was without foundation because the record supports a finding that Plaintiff is unable to perform even sedentary activity. In particular, the Plaintiff finds the ALJ erred by not considering and including in the hypothetical question that Plaintiff has severe fatigue and requires naps during the day. Plaintiff contends that because the record contains undisputed evidence of impairments and limitations not taken into consideration in the residual functional capacity or the hypothetical question, the vocational expert's response cannot be considered substantial evidence.

It is the ALJ's duty as fact finder to determine the residual functional capacity of the claimant. 20 C.F.R. §§404.1546(c), 416.946(c). It is only Plaintiff's subjective assessment that he

13

sleeps too much. (R. at 251, 314, 318-19). As discussed above, the ALJ discounted Plaintiff's subjective symptoms, and in determining Plaintiff's residual functional capacity relied upon the objective medical evidence in the record. Where the ALJ rejected evidence, the ALJ provided explanation as to inconsistencies that prompted the rejection. As to the hypothetical question posed to the vocational expert, the ALJ's residual functional capacity determination is supported by substantial evidence in the record. Hence, the hypothetical formulation was not improper. The vocational expert's conclusion then that Plaintiff's limitations to simple, routine, and repetitive work at any exertional level not requiring more than occasional interaction with co-workers or the public allowed Plaintiff to work as a garment hole puncher or a laundry laborer likewise is supported by substantial evidence in the record.

## V. CONCLUSION

The ALJ did not err by discounting Plaintiff's subjective complaints, rejecting the medical opinions of Dr. Guntur and Dr. Weisel, finding that Plaintiff's impairments did not meet or equal the Listings, or in formulating Plaintiff's residual functional capacity and hypothetical question. The ALJ's decision as a whole is supported by substantial evidence in the record. To that end, Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted. The decision of the ALJ is affirmed.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JON S. BIJOLD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-1230 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner Of | ) | Judge Nora Barry Fischer |
| Social Security | ) | |
| | ) | |
| Defendant. | ) | |

### **ORDER**

AND now, this 24th day of April, for the reasons set forth in the accompanying Opinion, it is hereby ordered that Plaintiff's Motion for Summary Judgment (Docket No.11) is denied and Defendant's Motion for Summary Judgment (Docket No.13) is granted.

BY THE COURT:
s/ Nora Barry Fischer
Nora Barry Fischer
U.S. District Judge

Dated: April 24, 2009.

cc/ecf: All counsel of record.